Defendants assign as error Findings of Fact numbers 4, 8, 11, 12 and 16, Conclusions of Law numbers 1 through 7, and Award numbers 1 through 7. Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies and affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On the date of plaintiff's alleged injury, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On 25 March 1995, an employment relationship existed between plaintiff and defendant-employer.
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 43 years old. He completed eight years of formal education. His work history included employment as a welder, commercial fisherman and millwright. Millwright work involves industrial maintenance of large machines and requires the ability to lift, stoop, climb and bend. Typically, millwrights are hired by employers to complete short, single occasion construction projects. Between projects, millwrights typically experience periods of unemployment.
2. Plaintiff's history of employment as a millwright was sporadic in nature. Plaintiff's inconsistent employment history was not due to the unavailability of work. Rather, plaintiff worked as a millwright only when he desired to be employed. Prior to his employment by defendant, plaintiff was capable of obtaining employment as a millwright whenever he desired.
3. On 25 March 1995, plaintiff was working as a millwright for defendant at its plant in Plymouth, North Carolina. Plaintiff was hired by defendant six days prior to 25 March 1995, to work in the final stages of defendant's project to rebuild a paper machine. This project was scheduled to be completed in April 1995.
4. While performing his usual duties for defendant on that date, plaintiff stepped into a depression or hole in a concrete floor at work. The depression measured approximately two inches in depth. When he stepped into the depression, plaintiff began experiencing low back pain. Plaintiff's back injury arose out of and in the course of his employment and was the direct result of a specific traumatic incident of the work assigned. Plaintiff's testimony on how his injury occurred is found to be credible.
5. Defendant received actual notice of this incident on the date that it occurred. Defendant did not admit or deny plaintiff's right to compensation within 14 days of the date it received actual notice of this incident as required by N.C. Gen. Stat. § 97-18. However, defendant paid plaintiff temporary total disability compensation at the rate of $478.00 for 23 weeks and three days ending 4 September 1995. Defendant did not notify the Industrial Commission that it was commencing payments of compensation to plaintiff pursuant to N.C. Gen. Stat. § 97-18(d). Defendant's payment of compensation constitutes an admission of liability and is tantamount to payment pursuant to a Form 60 Employer's Admission of Employee's Right to Compensation.
6. Defendant did not contest or deny liability for plaintiff's injury within 90 days of the date defendant had actual notice of plaintiff's claim. When defendant ceased making payments of compensation to plaintiff on 5 September 1995, defendant did not comply with the provision of N.C. Gen. Stat. § 97-18.1 for cessation of disability compensation and further terminated compensation without reasonable excuse.
7. Plaintiff received medical treatment from the Washington County Hospital Emergency Room in Plymouth on 25 March 1995; Family Medical Care in Greenville, North Carolina on 27 March 1995; Dr. Delaney, physiatrist, in New Bern, North Carolina on 29 March 1995; Dr. Gordon, physiatrist, in Charleston, South Carolina from 4 April 1995 to 21 August 1995; Dr. Jones, orthopedist, in Charleston, South Carolina from 31 January 1996 to 18 March 1997; and Dr. Campbell, general practitioner, from 26 March 1997 through the date of the hearing.
8. As a result of the incident on 25 March 1995, plaintiff sustained a back strain. He did not sustain any neurological injury. As a result of the back strain sustained on 25 March 1995, plaintiff retains a five percent permanent impairment of his back. Greater weight is given to the rating of Dr. Gregory Jones.
9. After 25 March 1995, plaintiff first returned to work in February 1996 when he began working for L-J, Inc. Plaintiff worked for this employer for four and one-half months during which time he earned wages totaling $3,327.75, which yields an average weekly wage of $171.27 based on 19 3/7 weeks of employment. Later in 1996, plaintiff returned to work as a millwright for Danco. Plaintiff worked as a millwright for this employer for one week during which time he earned $862.75. While plaintiff was able to complete this job, he had a great deal of difficulty doing so due to his continuing pain.
10. In April 1997, plaintiff became employed as a welder for JB Welding. While employed by JB Welding, plaintiff earned at least $400.00 per week. Since his injury, plaintiff also worked as a millwright for Brown Root. Plaintiff was employed by Brown Root for two weeks. Plaintiff testified that he did not recall the specific dates of his employment by Brown Root or the amount of wages he earned from that employer; however, plaintiff was again able to complete the job despite working with continuing pain. Plaintiff's earnings in these employments did not establish plaintiff's wage earning capacity.
11. While employed by defendant, plaintiff earned $14.60 per hour, the minimum hourly rate defendant paid millwrights.
12. Due to the shortness of time plaintiff was employed by defendant prior to 25 March 1995, it is impractical to compute plaintiff's average weekly wage by dividing his earnings by the number of weeks and parts thereof during which he earned wages. Defendant presented evidence of the earnings of plaintiff's co-worker, Phillip Burdette, during the year prior to the date of plaintiff's injury. Burdette worked a total of 3166 hours from 28 March 1994 through 26 March 1995, on the same project as plaintiff was employed. Although Burdette earned $18.85 per hour, multiplying the hours he worked times plaintiff's hourly wage of $14.60, plaintiff would have earned a total of $46,223.60 for the year preceding his injury by accident, had he worked along side of Burdette. Dividing that annual wage by 52 weeks, plaintiff's average weekly wage is $888.91. Determining plaintiff's weekly wage by comparison to this similarly situated employee's annual hours worked for defendant-employer, multiplied by plaintiff's hourly wage and divided by 52 weeks, yields a result that is fair and just to both parties.
13. By 17 June 1997, plaintiff was capable of occasionally lifting weights as great as 50 pounds, weights as great as 25 pounds frequently and weights as great as 10 pounds constantly. The physical demands required by the duties of a millwright were consistent with plaintiff's physical abilities as demonstrated by the results of his functional capacities examination on 17 June 1997.
14. On 17 June 1997, plaintiff possessed significant earning capacity. Although his actual earnings were diminished after that date, the greater weight of the evidence demonstrates that the decrease in his earnings after that date was not the result of diminished earning capacity, but rather his disinterest in being employed.
15. As a result of the incident on 25 March 1995, plaintiff was rendered incapable of earning wages equal to or greater than his pre-injury wages from defendant or any other employer from that date through 16 June 1997. Beginning 17 June 1997, plaintiff regained his capacity to earn pre-injury wages.
16. Having paid plaintiff disability compensation due to the incident on 25 March 1995, defendant admitted that plaintiff sustained a disabling injury on that date and could not thereafter unilaterally terminate payment of compensation without Industrial Commission approval. Therefore, defendant's defense of plaintiff's claim for disability compensation from 5 September 1995 through 16 June 1997 was due to stubborn, unfounded litigiousness.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following additional:
 CONCLUSIONS OF LAW
1. On 25 March 1995, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant. N.C. Gen. Stat. § 97-2(6); N.C. Gen. Stat. § 97-18(b); N.C. Gen. Stat. § 97-18(d).
2. Due to the shortness of time plaintiff was employed by defendant prior to 25 March 1995, it is impractical to compute plaintiff's average weekly wage by dividing his earnings by the number of weeks and parts thereof during which he earned wages. Instead, a comparison to a similarly situated employee's annual hours worked for defendant-employer, multiplied by plaintiff's hourly wage and divided by 52 weeks, yields a result that is fair and just to both parties. Using this method, plaintiff's average weekly wage is computed to be $888.91, yielding a compensation rate of $478.00 per week. N.C. Gen. Stat. §97-2(5).
3. As a result of his injury, plaintiff is entitled to payment of temporary total disability compensation at the rate of $478.00 per week from 5 September 1995 through 16 June 1997. N.C. Gen. Stat. § 97-29;Deese v. Champion International Corp., 133 N.C. App. 278, 515 S.E.2d 239
(1999).
4. Plaintiff is entitled to an amount equal to 10% of the temporary total disability payments due plaintiff herein, since those payments were not made within 14 days of the date they became due. N.C. Gen. Stat. § 97-18(b), (d), and (g).
5. Plaintiff is entitled to payment of permanent partial disability compensation at the rate of $478.00 per week for 15 weeks beginning June 17, 1997. N.C. Gen. Stat. § 97-31(23).
6. Plaintiff is entitled to an award of reasonable attorney's fee due to defendant's unreasonable defense of plaintiff's claim for temporary disability compensation from 5 September 1995 through 16 June 1997. N.C. Gen. Stat. § 97-88.1.
7. Plaintiff is entitled to payment of all medical expenses incurred as a result of his injury on 25 March 1995. N.C. Gen. Stat. § 97-25.1.
8. Defendant is entitled to an offset against the disability compensation due plaintiff equal to the wages he earned between 25 March 1995 and 16 June 1997.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay plaintiff temporary total disability compensation at the rate of $478.00 per week from 5 September 1995 through 16 June 1997. This amount shall be paid directly to plaintiff in a lump sum, subject to attorney's fees.
2. Defendant shall plaintiff a sum equal to 10% of the sum due plaintiff in paragraph 1 of this Award pursuant to N.C. Gen. Stat. §97-18(g).
3. Defendant shall pay plaintiff permanent partial disability compensation at the rate of $478.00 per week for 15 weeks beginning 17 June 1997 for the 5% rating to her back. This amount shall be paid directly to plaintiff in a lump sum, subject to attorney's fees.
4. Defendant shall pay all medical expenses incurred by plaintiff as a result of his injury on 25 March 1995.
5. Defendant shall pay plaintiff's attorney a reasonable fee of 25% of the lump sum due plaintiff in paragraphs 1, 2, and 3. This amount shall be deducted from the sum due plaintiff and paid directly to plaintiff's attorney.
6. Defendant shall pay the costs.
This the ___ day of August, 2000.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
 S/______________ RENE C. RIGGSBEE COMMISSIONER